# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

GARRY WALLACE                                                    PLAINTIFF

V.                              NO. 3:18-CV-00186-JTR

ANDREW SAUL,
**Commissioner of Social Security**                              DEFENDANT

## ORDER

### I.  Introduction:

On September 8, 2015 Plaintiff, Garry Wallace ("Wallace"), protectively filed an application for disability benefits.  On June 13, 2017, he protectively filed for supplemental security income benefits.   In both applications, he alleged a disability beginning on March 13, 2014.  (Tr. at 56).   After conducting a hearing on November 16, 2017, the Administrative Law Judge ("ALJ") denied Wallace's application.  (Tr. at 29). The Appeals Council denied his request for review.  (Tr. at 1).   Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.  __The Commissioner's Decision__:

The ALJ found that Wallace, age 54 at the time of the hearing, had not engaged in substantial gainful activity since March 13, 2014, the alleged disability onset date.   (Tr. at 21).   At Step Two, the ALJ found that Wallace had the following severe impairments: cardiomyopathy, hypertension, diabetes mellitus with mild neuropathy (severe in combination only), and degenerative joint disease of the shoulder with prior surgical repair.   (Tr. at 21).

After finding that Wallace's impairments did not meet or equal a listed impairment, the ALJ determined that Wallace had the residual functional capacity ("RFC") to perform a full range of medium work, to also include the full range of light work.   (Tr. at 22).   Based on this determination, the ALJ concluded, at Step Four, that Wallace could perform his past relevant work as a corrections officer. (Tr. at 27).

At Step Five, the ALJ made an alternative finding that there was other work that Wallace could perform, based on his age, education, work experience and RFC, such as the position of security guard.   (Tr. at 28).

Thus, the ALJ held that Wallace was not disabled.

## III.  Discussion:

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

### B.  Wallace's Arguments on Appeal

Wallace contends that the ALJ's decision to deny benefits is not supported by substantial evidence. Specifically, he argues that the ALJ erred by:  (1) finding "[o]verhead reaching does not materially erode the occupational base at any exertional level" (Tr. at 27);  (2) misrepresenting the medical record; (3) giving greater weight to opinions of non-examining disability screeners and his own lay

opinion, while giving little to no weight to the opinions of Wallace's treating and examining physicians; and (4) determining Wallace's RFC to include the full range of medium and light work. *Doc. 11*. For the reasons explained below, the Court concludes that the ALJ committed reversible error which requires this case be remanded for further proceedings.

### C.     The ALJ Erred In Determining Wallace's RFC

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ bears the primary responsibility for assessing a claimant's RFC - that is, what the claimant can still do, in spite of severe impairments. *Wildman*, 596 F.3d at 969.

The ALJ concluded that Wallace could perform a full range of medium work, to include the full range of light work. The regulations define medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying

of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Light work requires a claimant to be able to stand or walk for a total of 6 hours out of an 8-hour work day. *Frankl v. Shalala*, 47 F.3d 935, 937 (8th Cir. 1995).

To reach this conclusion, the ALJ elected to reject the limitations noted by Wallace's treating physician, Stephen Pirtle, M.D., and to give "great weight" to two opinions from DDS reviewing physicians, Alice Davidson, M.D. and Kristin Jarrard, M.D., neither of whom personally examined Wallace. (Tr. at 27, 85-86, 98).

In a medical source statement dated May 25, 2016, Dr. Pirtle noted Wallace's ongoing treatment for congestive heart failure and diabetes, as well as his history of rotator cuff and abdominal surgeries. Dr. Pirtle opined that Wallace: (1) could stand and walk for a maximum of 3 hours during an 8-hour day; (2) could work a maximum of one hour without taking a break; (3) could occasionally reach; and (4) would require frequent rest periods. (Tr. at 462-464).

The ALJ rejected Dr. Pirtle's opinion that Wallace could only stand/walk three hours daily, and for cause stated that Dr. Pirtle failed to identify any "objective evidence" to support this restriction. (Tr. at 27). The ALJ ignored Dr. Pirtle's earlier explanation, in the same document, that Wallace was taking pain medications

and muscle relaxers that would cause drowsiness and impact his ability to work.[2] (Tr. at 463). The ALJ also failed to address the other medical evidence in the record that supported Dr. Pirtle's opinion.

Despite acknowledging Wallace's "more recent diagnosis" of diabetic peripheral neuropathy, the ALJ failed to consider that diagnosis as an objective cause of Wallace's pain complaints.[3] Instead, the ALJ dismissed Wallace's complaints as "less-than-credible." (Tr. at 27).

An ALJ properly gives a treating physician's opinion "less weight" when the opinion is "inconsistent or contrary to the medical evidence as a whole." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). However, here, Dr. Pirtle's opinion was *consistent* with the medical evidence as a whole.

In July of 2015, Wallace reported that he had chronic issues related to pain in his right shoulder and low back pain. (Tr. at 398). Wallace's shoulder injury dated back to August of 2008, when he fell off a ladder at work, injuring his right shoulder and suffering other serious injuries. (Tr. at 616). As a result of his shoulder injury,

---

[2] Dr. Pirtle, or other providers in his office, consistently prescribed Hydrocodone-Acetaminophen to treat Wallace's pain.

[3] Diabetic neuropathy is a recognized "common and serious complication" of diabetes that "can be quite painful." *See* https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/symptoms-causes/syc-20371580.

Wallace's orthopedic surgeon, Dr. Brian Dickson, imposed the following *permanent* restrictions: (1) "no overhead use of right upper extremity;" and (2) "no lifting more than 5 lbs. with right upper extremity."   (Tr. at 616-617, 619).

Between April 1, 2015 and July 21, 2016, while being treated at the East Arkansas Family Health Clinic, Wallace reported chronic pain issues related to pain in his right shoulder and low back, which had previously been managed by orthopedic doctors before he lost his insurance.   (Tr. at 398).   He also complained of leg pain.   (Tr. at 407).

Between August 16, 2016 and December 28, 2016, Wallace was treated by Dr. Jesse Bradley, a podiatrist.   Wallace consistently reported that that he was experiencing neuropathic pain negatively impacting his ability to walk, his daily activities, and sleep.   (Tr. at 553, 558, 562, 566).   Dr. Bradley repeatedly advised Wallace to "reduce activity and get frequent rest periods."   (Tr. at 555, 560, 569). During the last visit, on December 28, 2016, Dr. Bradley noted that Wallace was still experiencing significant leg pain and recommended a neurology consult to address pain that Dr. Bradley believed was caused by "damage or pinched nerves in his back."   (Tr. at 555).

Between September 22, 2016 and October 30, 2017, while being treated at Dr. Pirtle's clinic, Wallace reported low back pain and pain in his legs, reduced by the

pain medications Dr. Pirtle prescribed. Ultimately, on June 30, 2017, Dr. Pirtle referred Wallace to a pain medicine doctor. (Tr. at 575-577, 579, 581, 589).

In the spring of 2017, Wallace was treated at Mid-South Pain Treatment, where he was diagnosed with mild diabetic neuropathy to be treated with non-opioid medication and blocks. (Tr. at 496-497). There is one reference in those records to one positive drug test for cocaine, which the ALJ mentioned in his opinion.[4] However, this single drug positive provided no reason to categorically conclude that Wallace's pain was not real or that all of the pain treatment he received was unnecessary.

Independent of Wallace's well-documented treatment for pain, the medical evidence demonstrated that he had other conditions that adversely impacted his ability to work. For example, his congestive heart failure caused shortness of breath made worse by activity. In July of 2015, during a stress test deemed abnormal, the "low-level exercise had to be stopped at 1:53 minutes secondary to SOB [shortness of breath] and fatigue." (Tr. at 392). In May of 2017, he was treated by a pulmonologist for shortness of breach on "mild to moderate exertion" made worse with activity. (Tr. at 515). He also had permanent restrictions on overhead lifting,

---

[4] There were other tests for drug use that were negative, which the ALJ did not mention. *See*, *e.g*., Tr. at 582.

as a result of his rotator cuff issues and degenerative joint disease of the shoulder. The ALJ ignored this limitation in erroneously concluding that "[o]verhead reaching does not materially erode the occupational base at any exertional level." (Tr. at 27). See *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014) (Definition of occasional reaching includes overhead reaching); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (case remanded because VE failed to address whether limitation in overhead reaching impacted identified jobs).

The ALJ failed to order a consultative examination, which would have been appropriate if the ALJ had any doubts about Wallace's credibility, or found the medical opinions to be inconsistent. *See Dornseif v. Astrue*, 499 Fed. Appx. 598 (7th Cir. 2013) (claimant testified that she had seizures three times a week, but given conflicting evidence of frequency and severity, the ALJ should have ordered a consultative physical examination).

Finally, a significant amount of the medical records in this case were generated *after* March 2016, the date of the second reviewing physician's report. Thus, the ALJ, after rejecting Dr. Pirtle's assessment of Wallace's work ability and without seeking a consultative examination, necessarily exercised his independent judgment in assessing those medical records. In doing so, he over-stepped his role and played doctor. See *Pate-Fires v. Astrue*, 564, F3d 935, 946-947 (8th Cir. 2009)

(quoting *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996)).

### D.    Step 5 Reversible Error

As an alternative finding at Step 5, the ALJ found Wallace had transferable skills to light exertion security guard work.   Wallace faults the ALJ for erroneously concluding he could stand or walk for six hours of a an eight-hour work day, as required for "light work."   See 20 C.F.R. § 404.1567(b).   Dr. Pirtle's restrictions, limiting Wallace to three hours of standing and walking in an eight-hour day, would *not* allow Wallace to perform light work.   Thus, the ALJ's flawed rejection of Dr. Pirtle's assessment as to Wallace's work ability means that this alternative finding was also flawed.   The determination of Wallace's RFC, on remand, will determine whether he can perform light work.

Wallace also faults the ALJ for failing to ask the VE about Wallace's limitations in overhead reaching.   In the event the ALJ reaches Step 5 on remand, he should also address the impact of the permanent restriction on overhead reaching.

### IV.   <u>Conclusion</u>:

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the RFC was contradictory to the medical evidence.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 20th day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE